QUINCE, J.
 

 The law firm of Wagner, Vaughan, McLaughlin, and Brennan seeks review of the decision of the Second District Court of Appeal in
 
 Wagner, Vaughn, McLaughlin & Brennan, P.A. v. Kennedy Law Group,
 
 987 So.2d 741, 744 (Fla. 2d DCA 2008), on the ground that the decision expressly and directly conflicts with the decision of the Third District Court of Appeal in
 
 Perez v. George, Hartz, Lundeen, Flagg & Fulmer,
 
 662 So.2d 361 (Fla. 3d DCA 1995), on a question of law. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const. For the reasons stated below, we approve in part and quash in part the decision of the Second District.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 The underlying case involves the application of section 768.26, Florida Statutes (2005), the attorney fees provision of the Florida Wrongful Death Act (the Act), in a wrongful death action that settled before
 
 *1189
 
 suit was filed and in which the survivors were represented by separate counsel. The case stems from the deaths of Robert and Thelma Elmore as the result of an automobile accident that occurred in June 2005. The Elmores were survived by three adult sons, Gary, Larry, and Robert. In August 2005, Gary was appointed the sole personal representative of the El-mores’ estates, pursuant to a provision in the Elmores’ wills. Larry and Robert both signed forms approving Gary’s appointment as the personal representative.
 

 Gary retained the Kennedy Law Group (KLG) to represent him in his capacity as personal representative. KLG negotiated a settlement for the full proceeds of the accident tortfeasor’s bodily injury insurance policy and distributed the net proceeds to Gary, who in turn divided the proceeds equally among the three brothers on August 19, 2005.
 

 On August 17, 2005, an attorney from the law firm of Wagner, Vaughan, McLaughlin
 
 &
 
 Brennan, P.A. (the Wagner firm) wrote KLG to inform them that the Wagner firm represented Larry Elmore. The Wagner firm also proposed a fee-sharing arrangement between the law firms for a wrongful death action. The Wagner firm suggested that the two firms participate equally in handling the action and split the attorney’s fee for whatever recovery was obtained for Gary and Larry Elmore. KLG did not respond to the letter.
 

 On the day that Larry received his share of the proceeds from the bodily injury settlement, the Wagner firm wrote to the attorney who represented the Elmores’ estates in the probate action. The letter stated that Larry did “not approve of the distribution apportionment,” that Larry should have been given an opportunity to object to the apportionment of the funds in the probate court, and that the probate court was required to approve the disbursement of the funds from the settlement. The Wagner firm also copied the letter to KLG and informed KLG that it did not have the authority to settle on behalf of Larry. The Wagner firm requested that KLG immediately stop payment on the settlement checks and take no further action regarding the claim.
 

 The Wagner firm then filed a petition in the probate court seeking the removal of Gary as the personal representative and the return of the settlement proceeds to the trust account until Larry’s objections could be heard. The probate court denied the petition as procedurally deficient, and the Wagner firm made no further objections to the distribution of the settlement proceeds. Larry cashed his settlement check without taking any further action in the courts.
 

 Shortly thereafter, KLG made a demand upon the Elmores’ automobile insurer for $2 million in uninsured motorist insurance proceeds. The insurer requested pre-suit mediation. On the morning of mediation, Robert Elmore retained the same Wagner firm attorney representing Larry to also represent him in the proceedings. The Wagner firm and KLG accompanied the three Elmore brothers to the mediation, which produced a settlement of $1.28 million.
 

 The Wagner firm memorialized Larry and Robert’s position in a letter to KLG at the end of the day of the mediation. The letter asserted that the case “could have and should have settled” higher than it did. The letter also stated that Larry and Robert’s claims were worth more than Gary’s, but the two brothers were willing to approve the settlement in exchange for a one-third distribution of the proceeds to each brother. The probate court approved the settlement, and the parties proceeded to an evidentiary hearing on attorney’s
 
 *1190
 
 fees. It was at this hearing that the probate court determined that the Wagner firm was not entitled to a portion of the attorney’s fee award because Larry and Robert did not have any competing claims with Gary. The probate court issued an order awarding KLG the entire contingency attorney fee amount from the $1.23 million in settlement proceeds.
 

 The Wagner firm appealed the probate court order to the Second District Court, arguing that the lower court erred in awarding KLG the entire fee for three reasons. First, the Wagner firm asserted that the Act does not provide for fees incurred if the case settles before suit is filed. Second, the Wagner firm argued that there was a conflict of interest between Gary and his brothers that precluded KLG from collecting attorney’s fees for work done for Larry and Robert. Third, the Wagner firm contended that it did not have to show that Larry and Robert had a competing claim in order to be entitled to fees under the Act. The Second District concluded that none of these arguments merited reversal.
 
 See Wagner, Vaughn, McLaughlin & Brennan, P.A. v. Kennedy Law Group,
 
 987 So.2d 741, 744 (Fla. 2d DCA 2008).
 

 The Second District held that even though the wrongful death action settled prior to the filing of a suit, section 768.26, Florida Statutes (2005), did not preclude the award of attorney fees to the personal representative’s counsel.
 
 Id.
 
 at 745-46. The Second District explained that pre-suit negotiations are an important part of wrongful death litigation and that section 768.26 does not limit recoverable fees to those incurred subsequent to filing suit. The Second District also cited this Court’s decision in
 
 Wiggins v. Estate of Wright,
 
 850 So.2d 444 (Fla.2003), in which this Court approved the Fourth District’s decision in
 
 In re Estate of Catapane,
 
 759 So.2d 9 (Fla. 4th DCA 2000), and its method for allocating attorney’s fees in a wrongful death action. Because this Court approved the decision in
 
 Catapane,
 
 in which the insurers had offered the limits of coverage before counsel filed a wrongful death action, the Second District reasoned that “there is no question that section 768.26 applies to provide for fees incurred even in cases that settle before suit is filed.”
 
 Wagner,
 
 987 So.2d at 746.
 

 The Second District also concluded that the other survivors did not have competing interests with Gary that would preclude the attorney fee award to the personal representative’s counsel. The court explained that the Wagner firm’s objection to the apportionment of the bodily injury settlement would have established a conflict of interest, had it been pursued. However, the court noted, Larry had abandoned his objection to the apportionment after his petition to remove Gary as personal representative was dismissed. Further, neither Larry nor Robert objected to the amount or the apportionment of the settlement and had waived any objection by accepting their equal shares.
 
 Id.
 

 Finally, the Second District concluded that the probate court did not abuse its discretion in declining to award the Wagner firm a share of the attorney’s fees because the Wagner firm did not perform any work on any aspect of the case in which KLG had a conflict of interest. The court explained that the survivors’ counsel was required to show a competing interest in order to be entitled to share of attorney fees, which it had not shown.
 
 Id.
 
 at 746-47.
 

 The Wagner firm sought review by this Court based on direct conflict with the decision of the Third District in
 
 Perez v. George, Hartz, Lundeen, Flagg & Fulmer,
 
 662 So.2d 361 (Fla. 3d DCA 1995), which also involved the allocation of attorney’s
 
 *1191
 
 fees in the settlement of a wrongful death action. In a footnote in
 
 Perez,
 
 the Third District concluded that section 768.26 was not applicable because “[t]here was no action for wrongful death filed or litigated in this case.”
 
 Id.
 
 at 364 n. 4. We granted review on the basis of this conflict as to the applicability of section 768.26. For the reasons explained below, we approve in part and quash in part the decision in
 
 Wagner.
 

 ANALYSIS
 

 The Florida Wrongful Death Act (the Act), which encompasses sections 768.16 to 768.26 of the Florida Statutes, provides that it is the public policy of the State of Florida to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. § 768.17, Fla. Stat. (2005). The Act is designed to substitute the financial resources of the wrongdoer for the resources of the decedent, in an attempt to meet the financial obligations of the decedent,
 
 Ellis v. Humana of Fla., Inc.,
 
 569 So.2d 827 (Fla. 5th DCA 1990), and to prevent a tortfeasor from evading liability for his or her misconduct when such misconduct results in death,
 
 Variety Children’s Hosp. v. Perkins,
 
 445 So.2d 1010 (Fla.1983). The Act also eliminates the multiplicity of suits that resulted from each survivor bringing an independent action and avoids survivors racing to get the first judgment.
 
 See In re Estate of Catapane,
 
 759 So.2d 9, 11 (Fla. 4th DCA 2000). By statute, the personal representative is the only party with standing to bring a wrongful death action to recover damages for the benefit of the decedent’s survivors and the estate. § 768.20, Fla. Stat. (2005);
 
 see also Wiggins v. Estate of Wright,
 
 850 So.2d 444, 446 (Fla.2003). The survivors may not bring separate legal actions and are required to participate in the single legal action filed by the estate.
 
 Wiggins,
 
 850 So.2d at 446. However, the survivors are still entitled to be represented by counsel of their choice.
 
 Id.
 
 at 449.
 

 In analyzing the provisions of the Act, this Court has stated that it “is guided by the Legislature’s general intent that the remedial provisions of the wrongful death statute should be liberally, rather than strictly or narrowly, construed. While the general rule is that statutes in derogation of the common law are strictly construed, the general rule of strict construction does not, in Florida, apply to a remedial statute in derogation of the common law.”
 
 BellSouth Telecomms., Inc. v. Meeks,
 
 863 So.2d 287, 290 (Fla.2003);
 
 see also
 
 § 768.17, Fla. Stat. (2005) (“Sections 768.16-768.26 are remedial and shall be liberally construed.”).
 

 Section 768.26 of the Act, which is entitled “Litigation Expenses,” provides:
 

 Attorneys’ fees and other expenses of litigation shall be paid by the personal representative and deducted from the awards to the survivors and the estate in proportion to the amounts awarded to them, but expenses incurred for the benefit of a particular survivor or the estate shall be paid from their awards.
 

 § 768.26, Fla. Stat. (2005). The Wagner firm argues that the plain language of this section makes it applicable only where a wrongful death suit has been filed, and not where there is a pre-suit settlement. The Wagner firm cites the Third District’s decision in
 
 Perez v. George, Hartz, Lundeen, Flagg & Fulmer,
 
 662 So.2d 361 (Fla. 3d DCA 1995), to support this argument.
 

 Perez
 
 involved the settlement of a wrongful death action brought by the surviving parents of a minor child who had been killed in a car accident. The divorced parents retained counsel separately and signed agreements with their own counsel. In pre-suit mediation, the moth
 
 *1192
 
 er’s attorneys obtained a $500,000 settlement for the estate. Both parents were subsequently named as co-personal representatives of the child’s estate. The mother’s attorneys sought a one-third contingency fee from the entire proceeds of the settlement. The Third District concluded that the mother’s attorneys were not entitled to a fee from the father because he had not signed a contract with them for legal services. The court held that the mother’s attorneys were only entitled to a fee award of one-third of the proceeds received by the mother under the contingency fee agreement signed by her. However, pertinent to the instant case, the Third District also concluded that section 768.26 did not apply because “[t]here was no action for wrongful death filed or litigated in [the] case.”
 
 Id.
 
 at 364 n. 4.
 

 Other Florida courts, including this Court, have not restricted section 768.26 to circumstances where a lawsuit has been filed or litigated. In fact, other Florida courts have repeatedly applied the statute to pre-suit settlements obtained by counsel.
 
 See, e.g., Wiggins v. Estate of Wright,
 
 850 So.2d 444, 445 (Fla.2003) (applying section 768.26 in a wrongful death case where counsel “negotiated a settlement of the estate’s claim with the hospital”);
 
 Perris v. Estate of Perris,
 
 764 So.2d 870, 870-71 (Fla. 4th DCA 2000) (stating that the case “concerns the computation of attorney’s fees in a wrongful death action” where the “ease was settled for the total policy limits of $125,000”);
 
 In re Estate of Catapane,
 
 759 So.2d 9, 10 (Fla. 4th DCA 2000) (“It was unnecessary for [survivors] to file a wrongful death action as the [uninsured motorist] insurer offered its limits of $100,000 and the liability insurer offered its limits of $30,000.”).
 

 This application of the statute is consistent with the stated legislative intent that the Act be “liberally construed.” § 768.17, Fla. Stat. (2005). Additionally, this furthers the public policy favoring settlement of disputes without litigation where possible. Thus, we agree with the Second District that section 768.26 applies even in those circumstances where a wrongful death claim is settled pre-suit and disapprove the Third District’s decision in
 
 Perez
 
 to the extent that it holds that the statute does not apply where no action for wrongful death has been filed or litigated.
 

 However, resolution of this issue does not end our review of this case. We must also determine how the fees authorized by section 768.28 are to be apportioned when survivors are represented by separate counsel, as were the brothers in the instant case. The Second District concluded that the Wagner firm was not entitled to any portion of the contingency fee because the firm “did not perform work on any aspect of the case in which KLG had a conflict of interest.”
 
 Wagner,
 
 987 So.2d at 746. The Second District explained that while there was a potential conflict of interest between Larry and Robert and the personal representative’s counsel, no actual conflict arose because Larry and Robert never objected to the amount or the apportionment of the uninsured motorist settlement obtained by counsel.
 
 Id.
 
 The Second District further concluded that the Wagner firm had to show that Larry and Robert had a competing claim in order to be entitled to attorney’s fees under the Act. We find the Second District’s reading of the statute to be too restrictive on this point and inconsistent with our previous decision in
 
 Wiggins v. Estate of Wright,
 
 850 So.2d 444 (Fla.2003).
 

 Section 768.26 provides that attorney’s fees and other expenses of litigating a wrongful death action are to be paid by the personal representative and deducted from the awards to the survivors and the
 
 *1193
 
 estate in proportion to the amounts awarded to them. Counsel for the personal representative is only required to have a contingent fee contract with the personal representative who prosecutes the case for the benefit of all survivors and the estate.
 
 See In re Estate of Catapane,
 
 759 So.2d 9, 11 (Fla. 4th DCA 2000). Thus, counsel for the personal representative
 
 potentially
 
 may be compensated out of the entire recovery to the estate. However, where counsel for the personal representative cannot represent a survivor because of a conflict of interest, counsel is not entitled to a fee on that survivor’s portion of the recovery.
 
 Id.
 
 Further, a survivor creates a competing claim when he or she chooses to be represented by separate counsel, which is the survivor’s right.
 
 Wiggins,
 
 850 So.2d at 449. The Act only limits the number of lawsuits that may be filed in a wrongful death case, not the number of attorneys who may represent the survivors.
 

 In
 
 Wiggins,
 
 we approved of and adopted the
 
 Catapane
 
 procedure for the allocation of attorney’s fees when there are survivors with competing interests who are represented by separate counsel.
 
 Wiggins,
 
 850 So.2d at 450. Under this procedure, “a trial court determines the attorneys’ fee awards by compensating the personal representative’s attorney out of the total settlement proceeds, reduced by the amount necessary to reasonably compensate the other survivors’ attorneys for their services in representing those survivors in the proceedings.”
 
 Id.
 
 Where it can be demonstrated that one attorney played a greater role in securing a total award in a wrongful-death action in which the decedent’s survivors were represented by more than one attorney due to competing interests, a larger fee may be proper for that attorney.
 
 Id.
 
 When survivors have competing claims and are represented by separate attorneys, the attorney’s fees from the wrongful-death suit should be awarded in a manner commensurate with the attorney’s work, providing for the proportional payment of attorney’s fees by all the survivors out of their respective awards.
 
 Id.
 
 In no instance, however, should a survivor be penalized for hiring separate counsel by having to pay a fee for recovery of the same amount twice.
 
 Id.
 

 Wiggins
 
 involved the estate of a woman who was survived by her husband, her two minor children with that husband, and her two minor children from a previous marriage. As personal representative and surviving spouse, the husband retained an attorney on a contingency fee basis to institute a wrongful death claim on behalf of the survivors and the estate against the hospital where the wife died. The two children from the prior marriage retained their own attorney to look after their interests as surviving beneficiaries. Counsel for the personal representative negotiated a settlement with the hospital, which the court and all parties approved. However, counsel for the personal representative proposed a distribution plan that favored the husband and his two children and did not compensate the children from the prior marriage on par with the children from the current marriage. The attorney for the children from the prior marriage opposed the distribution plan on her clients’ behalf. The trial court rejected the proposed inequitable plan and instead ordered that the survivors receive equal shares of the settlement.
 
 Wiggins,
 
 850 So.2d at 445. However, the trial court awarded counsel for the personal representative a full fee based on his agreement with the husband and calculated the percentage of the fee based on the entire settlement paid to the estate. The children’s attorney sought to be awarded a portion of this fee, but the trial court determined that her fee should come solely from her clients out of their
 
 *1194
 
 net share of the proceeds, which had been reduced by the payment of the fee to counsel for the personal representative. On appeal, the Fifth District affirmed this ruling.
 
 Id.
 
 at 446. We accepted review based on conflict with
 
 Catapane
 
 on the issue of allocation of fees.
 

 We approved the holding in
 
 Catapane
 
 and quashed the decision in
 
 Wiggins. Id.
 
 at 450. In reaching our decision, we explained that the
 
 Wiggins
 
 court had ignored the potential conflict of interest that is created when survivors hire separate counsel to prosecute a claim for the damages that each is entitled to under the statute. 850 So.2d at 448. Florida’s wrongful death statute focuses on the loss suffered by survivors of the decedent and creates a separate entitlement to damages for each survivor.
 
 Id.
 
 at 446. Thus, “the potential for conflict between the competing interests of the individual beneficiaries” is “ever present” in a wrongful death claim.
 
 Id.
 
 at 449.
 

 In the instant case, Larry and Robert chose to be represented by separate counsel, indicating a lack of “commonality of interest” among the Elmores’ survivors.
 
 See id.
 
 at 448 (noting that a single attorney may be able to represent the survivors when all of the survivors have a “commonality of interest” as to prosecuting a wrongful death claim and in distributing the recovery). Under the Act, Larry and Robert were entitled to be represented by counsel of their choice.
 
 See id.
 
 at 449. Further, their counsel was entitled to reasonable compensation for the services rendered.
 
 Id.
 

 Under the Second District’s holding in this case, survivors would be deprived of the right to hire their own counsel unless they were willing to pay double fees from their recovery, i.e., one fee to the counsel hired by the personal representative and another to their separate counsel with whom they have a contractual obligation. We roundly condemned this outcome in
 
 Wiggins. Id.
 
 at 450 (“In no instance, however, should a survivor be penalized for hiring separate counsel by having to pay a fee for recovery of the same amount twice.”).
 

 The Second District also ruled that the Wagner firm was not entitled to a share of the attorney’s fees because they “did not perform work on any aspect of the case in which KLG had a conflict of interest.”
 
 Wagner, 987
 
 So.2d at 743. The Second District concluded that there was no conflict of interest between Larry and Robert and KLG because the brothers never objected to the amount or the apportionment of the uninsured motorist insurance settlement.
 
 Id.
 
 at 746. As we noted above, this reading of the Act is unduly restrictive and unfairly impinges on a survivor’s right to hire separate counsel.
 

 Additionally, under the Second District’s ruling the survivors’ separate attorney would not be entitled to a fee from the settlement even if he or she made a pivotal contribution to recovering that settlement, if the survivors had not asserted an actual competing claim. Under the method we approved in
 
 Wiggins,
 
 attorney’s fees from a wrongful death suit are to be awarded in a manner commensurate with the attorneys’ work. 850 So.2d at 450. As we explained in
 
 Wiggins,
 
 in those circumstances where “all of the survivors have a commonality of interest and a single attorney can represent those interests,”
 
 id.
 
 at 448, that single attorney will be entitled to attorney’s fees based on the entire recovery. However, where there is no commonality of interest among the survivors, the personal representative’s attorney cannot represent all of the survivors without their consent.
 
 Id.
 
 at 450 (citing Rule Regulating the Florida Bar 4-1.7, which prohibits an attorney from representing adverse in
 
 *1195
 
 terests unless specific requirements are met, including that each affected client gives informed consent to such representation). Further, in those circumstances where survivors have competing claims and are represented by separate attorneys, the fee payable to the personal representative’s attorney and the survivors’ separate counsel will be determined by the work performed by each. For example, where two competing survivors are represented by separate attorneys throughout the litigation and both successfully prosecute a claim to judgment, then the fees should ordinarily be awarded out of the survivors’ respective recoveries.
 
 Id.
 
 However, if it can be demonstrated that one attorney played a greater role in securing the total award, a larger fee may be proper.
 
 Id.
 
 We concluded that the attorney who had represented the competing survivors in
 
 Wiggins
 
 was entitled to attorney’s fees for the services she rendered in securing a greater portion of the settlement for those survivors.
 
 Id.
 
 at 449. However, we also explained that it was unclear what part this attorney had played in securing the overall settlement. We noted that if her services were limited to securing an increase in the competing survivors’ recovery over that proposed by the personal representative’s attorney, then her fee might have to be adjusted accordingly.
 
 Id.
 
 at 449-50.
 

 In the instant case, it is unclear what part, if any, the Wagner firm played in securing the overall settlement. There is also no record evidence that the Wagner firm secured any increase in the settlement recovery for Larry and Robert. Accordingly, we conclude that the personal representative’s attorney KLG should be compensated out of the total settlement proceeds,
 
 reduced
 
 by the amount necessary to reasonably compensate the Wagner firm for the work they performed in representing Larry and Robert in the proceedings.
 
 See Wiggins,
 
 850 So.2d at 450.
 

 CONCLUSION
 

 For the reasons expressed above, we approve in part and quash in part the Second District’s decision in
 
 Wagner
 
 and remand for proceedings to determine reasonable compensation for the survivors’ attorneys.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.